**FILED  
CLERK**  
9/6/2019 3:20 pm  
**U.S. DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  
LONG ISLAND OFFICE**

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,
                                        MEMORANDUM AND ORDER
        -against-                       04-CR-0209(JS)

LAVAL FARMER,
                Defendant.
----------------------------------X
APPEARANCES
For the Government:  Anthony Bagnuola, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201

For the Defendant:   Laval Farmer, pro se
                     #12786-067
                     U.S. Penitentiary Canaan
                     P.O. Box 300
                     Waymart, Pennsylvania 18472
```

SEYBERT, District Judge:

On October 17, 2018, Laval Farmer ("Petitioner"), acting pro se, petitioned this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (See Pet., D.E. 275, at 1-5.)[1] Petitioner contends that his mandatory life imprisonment sentence violates the Eighth Amendment of the United States Constitution. (See Pet. at 2-4.) For the following reasons, the Petition is DENIED in its entirety.

---

[1] The instant Petition was originally assigned to the Hon. Thomas C. Platt. On September 11, 2008 the case was reassigned to the undersigned.

BACKGROUND

The Court assumes familiarity with the facts of this case, which are reviewed in the Second Circuit's October 8, 2009 decision. See United States v. Farmer, 583 F.3d 131, 136-40 (2d Cir. 2009). The pertinent details are discussed below.

On February 22, 2006, a Superseding Indictment ("Indictment") was filed, charging Petitioner with the following: (1) Conspiracy to Commit Assaults with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(6); (2) Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1); (3) Use of a Firearm in Furtherance of Murder in Aid of Racketeering, in violation of 18 U.S.C. § 924(c); (4) Attempted Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1); and (5) two counts of Use of Firearms in Furtherance of Attempted Murder in Aid of Racketeering, in violation of 18 U.S.C. § 924(c). (Superseding Indict., D.E. 280-1.) As set forth in the Indictment, Petitioner's criminal conduct included his 2001 murder of fourteen-year-old Jose Angel White in Roosevelt, New York, and his 2002 attempted murder of Jacquel Patterson in Wilkes-Barre, Pennsylvania. (Superseding Indict. at 6-9; see also Farmer, 583 F.3d at 136-40.) According to the Indictment, these criminal acts were committed "for the purpose of maintaining and increasing his position in the Bloods." (Superseding Indict. at 6-7.) At the time of these crimes, Petitioner was a member of the Velt

Gangsta Lanes ("VGL"), a contingent of the Bloods gang, active in Roosevelt, New York. Farmer, 583 F.3d at 136.

Specifically, on September 22, 2001, Petitioner travelled to Roosevelt, New York with other members of the Bloods to exact revenge for an assault of a member of VGL by a member of a rival Crips gang. Id. at 136-37. Petitioner drove past two boys, one dressed in the blue attire of a Crip, fired shots in their direction, and left the scene. Id. at 137. As a result of these shots, Petitioner killed the boy dressed in blue, who was fourteen-year-old Jose Angel White and was not a member of the Crips. Id. Approximately three months after this murder, Petitioner moved to Wilkes-Barre, Pennsylvania, where he continued his association with the Bloods while living with Jacquel Patterson and selling drugs with fellow Bloods. Id. at 137-38. Following conflicts with Jacquel Patterson, Petitioner engaged in an altercation with him and shot him multiple times. Id. at 138. Jacquel Patterson suffered gunshot wounds about his body and face, but survived the shooting. Id. After the attempted murder of Jacquel Patterson, Petitioner returned to New York, where he was arrested on July 16, 2002. Id.

Petitioner's jury trial began on February 7, 2006 in the Eastern District of New York. Id. at 139. During the trial, the jury heard testimony from members of law enforcement, expert witnesses, and civilian witnesses. Id. at 139-40. Significant

for purposes of Petitioner's underlying direct appeal, defense counsel for Petitioner made a pre-trial motion to preclude any reference to Petitioner's nickname "Murder," which the Court denied. Id. at 139. Throughout the course of the trial, "several government witnesses testified to knowing [Petitioner] as 'Murder' and used the nickname repeatedly in their testimony. Similarly, the government used the name in its questions and dozens of times in argument to the jury." Id. at 140. On February 22, 2006, at the conclusion of the jury trial, Petitioner was convicted of all counts contained in the Indictment. Id. On June 20, 2007, the Honorable Thomas C. Platt sentenced Petitioner to two terms of life imprisonment, as well as multiple terms of twenty-five years of incarceration to run consecutively. (J., D.E. 280-2.)

Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals. On October 8, 2009, the Second Circuit issued its decision, affirming in part, vacating in part, and remanding the case back to the district court. See Farmer, 583 F.3d at 152. First, the Second Circuit rejected Petitioner's claims that there was insufficient evidence presented to the jury to sustain his convictions. Id. at 140-44. Next, the Second Circuit addressed Petitioner's claims that the use of his nickname "Murder" during the Government's case and summation was unduly prejudicial. Id. at 144. The Second Circuit determined that the Government's evidence regarding the murder Jose Angel White was

4

substantial enough to overcome any potential prejudice from the use of the nickname and upheld Petitioner's convictions on the charges related to White's murder. Id. at 147. However, the Second Circuit found that Petitioner was "entitled to a new trial for the [Jacquel] Patterson shooting because of the [G]overnment's misuse of [Petitioner's] nickname, the [D]istrict [C]ourt's failure to forestall or mitigate the prejudice, and the arguable strength of [Petitioner's] defenses to the charged offense." Id. at 148. Thus, the Second Circuit remanded the case back to the District Court as to the attempted murder charges and the firearms charges related to the attempted murder. Id. at 152. Petitioner filed a Petition for a Writ of Certiorari, which was denied on April 5, 2010. Farmer v. United States, 559 U.S. 1058, 130 S. Ct. 2365, 176 L. Ed. 2d 578 (2010).

Upon returning to the District Court, the Government submitted a letter on January 19, 2010 stating that as Petitioner is serving a mandatory life sentence for Jose Angel White's murder, the Government would not seek re-trial on the vacated Jacquel Patterson charges. (See Gov't Letter, D.E. 263.) By Order dated February 24, 2010, the Court dismissed the Jacquel Patterson attempted murder and firearms related charges. (See Feb. 24, 2010 Order, D.E. 266.)

On March 29, 2011, Petitioner filed a motion for an extension of time to file a petition for relief under § 2255.

(Mot. for Extension, D.E. 270.) On April 14, 2011, Petitioner filed a supplemental motion related to his request for an extension of time to file a Section 2255 petition. (Suppl. Mot., D.E. 272.)

On September 7, 2018, Petitioner filed this Petition for habeas relief under § 2255. (See Pet.) Petitioner relies on the Supreme Court's decision in Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) and argues that his mandatory life sentence violates the Eighth Amendment as it constitutes cruel and unusual punishment. (See Pet'r Br., D.E. 275, at ECF pp. 6-28.) The Government filed its opposition on November 30, 2018, arguing that the Petition is both untimely and without merit. (Resp't Opp., D.E. 280, at 5-8.) On December 19, 2018, Petitioner replied to the Government, reiterating his grounds for relief. (Pet'r Reply, D.E. 282.) On August 8, 2019, the Government filed a letter response, providing the Court with a Second Circuit decision that they argue is dispositive in this matter, (Resp't Reply, D.E. 290), and on August 19, 2019 Petitioner replied to the Government's letter response (see Pet'r Letter Reply, D.E. 291).

## DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. Section 2255 Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington

6

v. Richter, 562 U.S. 86, 91, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011). To obtain relief under § 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)).

When determining whether to grant relief, "the scope of review on a § 2255 motion should be narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citations omitted). Additionally, in a federal habeas corpus proceeding, the petitioner has the burden of proving his claims by a preponderance of the evidence. Skaftouros v. United States, 667

7

F.3d 144, 158 (2d Cir. 2011); Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

As Petitioner's submissions were filed pro se, the Court will liberally construe them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

II. Timeliness

Generally, to bring a motion under Section 2255, a petitioner must file the motion one year from when the conviction is considered final. See 28 U.S.C. § 2255(f). Relevant to this Petition, the one-year limitations period can run from the later of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). The Court notes that without this tolling provision, Petitioner's time to file his Petition expired on April 5, 2011, one year from the denial of his Petition for a Writ of Certiorari.

As a threshold matter, the Court first addresses the motion for an extension of time to file a Section 2255 Petition, filed with the Court on March 29, 2011. (See Mot. for Extension.)

8

The Second Circuit has found that "[w]here a motion, nominally seeking an extension of time, contains allegations sufficient to support a claim under section 2255, a district court is empowered, and in some instances may be required . . . to treat that motion as a substantive motion for relief under section 2255." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citing Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam)). Accordingly, the district court "must first determine whether the motion contains allegations supporting a claim for relief under section 2255. If it does, the district court should construe it as such, and then decide whether the motion is timely. If it does not, the district court has no jurisdiction [ ] to consider the motion." Id. Here, though Petitioner's motion for an extension of time was filed within the one-year limitations period, it does not contain any basis in fact or in law for relief under Section 2255. Therefore, the request for an extension of time cannot be construed as a substantive motion for relief under Section 2255.

Subsequently, on September 7, 2018, Petitioner filed the instant motion for relief under Section 2255, urging the Court to toll the applicable limitations period. Petitioner claims that the statute of limitations should not bar his Petition as the "facts relied upon by [P]etitioner were not made available to [P]etitioner until Dr. Steinberg, a leading expert in the scientific field of adolescence, testified on September 13, 2017

9

[ ], and the filing of this motion is within one year from that date." (Pet'r Br. at 4.) The Court will further discuss the substance of Petitioner's claims regarding Dr. Steinberg's testimony. However, for purposes of timeliness, the Court must determine whether Dr. Steinberg's testimony in another criminal matter constitutes a "new fact" that would entitle Petitioner to tolling of the limitations period.

The Court notes that it is well-settled that "[e]quitable tolling applies only in . . . rare and exceptional circumstance[s]" where the defendant has "acted with reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and citations omitted). In addition, "pro se status does not in itself constitute an extraordinary circumstance meriting tolling." Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004).

The Second Circuit has found that the due diligence in the tolling provision "'does not require the maximum feasible diligence, only 'due,' or reasonable, diligence.'" LoCascio v. United States, 395 F.3d 51, 55 (2d Cir. 2005) (quoting Wims v. United States, 225 F.3d 186, 190 n.4 (2d Cir. 2000)). In addition, "'[t]ime begins when the [petitioner] knows (or through diligence could discover) the important facts, not when the [petitioner] recognizes their legal significance.'" Matera v. United States,

83 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000).

Here, Petitioner argues that Dr. Steinberg's testimony during a Section 2255 hearing in the District of Connecticut amounts to "new facts" that entitle him to tolling of the statute of limitations. (See Pet. Ex. A, Dr. Steinberg Testimony, D.E. 275-1; see also Cruz v. United States, No. 11-CV-0787, 2018 WL 1541898, at *22-25 (D. Conn. Mar. 29, 2018). Generally, during the aforementioned hearing, Dr. Steinberg testified regarding the cognitive abilities of adolescents and suggested that the hallmark characteristics of adolescence extend through the age of twenty-one. (See Dr. Steinberg Testimony, D.E. 275-1.) Petitioner states that as he was nineteen years old at the time of his crime and according to Dr. Steinberg's testimony he should be treated as a juvenile. (See Pet'r Br. at 11-22.)

The Court finds that Dr. Steinberg's testimony in a separate criminal case does not unearth "new facts" that should toll the statute of limitations. Though Dr. Steinberg suggested that his conclusions regarding adolescence are applicable to individuals aged eighteen through twenty-one, it does not follow that this Court must adopt Dr. Steinberg's testimony in this separate matter and toll the statute of limitations. The Court notes that Petitioner fails to explain what about his cognitive state makes him entitled to treatment as a juvenile and concedes

11

that much of Dr. Steinberg's conclusions were previously published in his 2003 works. Thus, Petitioner cannot claim that Dr. Steinberg's 2017 testimony created a new fact that Petitioner lacked the mental capacity to receive a life sentence. Further, even if this Court determined that Dr. Steinberg's testimony tolled the statute of limitations, the Court denies the Petition on the merits.

III. Eighth Amendment Claim

As stated above, Petitioner's request for habeas relief is based on the Supreme Court's decision in Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). In Miller, the Supreme Court considered a case where two fourteen-year-olds received mandatory life imprisonment for murder convictions. Id. at 465, 132 S. Ct. at 2460. The Supreme Court took issue with the fact that the mandatory nature of such sentences prevents courts from considering "characteristics of youth" in determining sentence and stated that "[b]y removing youth from the balance-- by subjecting a juvenile to the same life-without-parole sentence applicable to an adult--these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." Id. at 473-74, 132 S. Ct. at 2465-66. Ultimately, the Supreme Court held that imposing mandatory life imprisonment sentences without the possibility of parole on juveniles convicted of homicide violated

12

the Eighth Amendment and constituted cruel and unusual punishment. Id. at 489, 132 S. Ct. at 2474-75. The Court emphasized the following:

> We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because the holding is sufficient to decide these cases, we do not consider Jackson's and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in Roper, Graham, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

Id. at 479-80, 132 S. Ct. at 2469 (citations omitted).

Petitioner asks the Court to extend the Miller ruling to his case, but the Court declines to do so. Petitioner was nineteen when he murdered Jose Angel White. He was not under the age of

13

eighteen and therefore <u>Miller</u> does not mandate this Court grant relief. <u>Miller</u> plainly stated that its ruling applied to juveniles, under the age of eighteen. <u>Id.</u> at 465, 132 S. Ct. at 2460. In cases leading up to <u>Miller</u> addressing Eighth Amendment challenges to the sentencing of juveniles, the Supreme Court routinely set the age at eighteen. For example, in <u>Roper v. Simmons</u>, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), the Supreme Court prohibited the imposition of the death penalty as a sentence for an individual younger than eighteen, stating:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

<u>Id.</u> at 574, 125 S. Ct. at 1197-98. Subsequently, in <u>Graham v. Florida</u>, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the Supreme Court held that sentencing a juvenile to life without parole for non-homicide offenses violates the Eighth Amendment, again setting the age at eighteen. <u>Id.</u> at 74-75, 130 S. Ct. at 2030.

The Court acknowledges that Petitioner relies on Cruz to support his basis for relief. In Cruz, the District of Connecticut granted a request for habeas relief from a petitioner who was serving a life sentence for shooting and killing two individuals when the petitioner was eighteen years and twenty weeks old. Cruz, 2018 WL 1541898, at *1-2, 25. Prior to granting the Section 2255 petition, the court held an evidentiary hearing, during which Dr. Steinberg "testified about the status of scientific research on adolescent brain development and Cruz testified about the trajectory of his life." Id. at *3. The district court discussed Dr. Steinberg's testimony at length, addressing the following findings: (1) "hot cognition [which] requires the individual to regulate and control his emotions . . . is not fully mature until the early-or mid 20s"; (2) "late adolescents" which Dr. Steinberg defined as ages eighteen through twenty one "still show problems with impulse control and self-regulation and heightened sensation-seeking, which would make them in those respects more similar to somewhat younger people than older people"; (3) "the ability to resist peer pressure is still developing during late adolescence"; and (4) "people in late adolescence are . . . more capable of change than are adults". Id. at *23-24 (internal quotation marks and citations omitted). The district court acknowledged that "[t]he court today is not asked to determine whether the line should be drawn at age 20. Rather, the issue before the court is

15

whether the conclusions of Miller can be applied to Cruz, an 18-year-old." Id. at *24. Ultimately, the district court concluded that "relying on both the scientific evidence and the societal evidence of national consensus . . . the hallmark characteristics of juveniles that make them less culpable also apply to 18-year-olds." Id. at *25. The Government characterizes the Cruz decision "as a notable outlier, and has not, since it was issued, been favorably cited by any federal court of which the government is aware." (Resp't Opp. at 8.) The Government provides multiple cases that declined to extend Miller to those above the age of eighteen. (See Resp't Opp. at 8.)

Recently, the Second Circuit addressed this issue in a case where petitioners aged between 18 and 22 argued that their mandatory life sentences amounted to cruel and unusual punishment "because scientific research purportedly shows that the biological factors that reduce children's 'moral culpability' likewise affect individuals through their early 20s." United States v. Sierra, Nos. 15-2220(l), 15-2247(CON), 15-2257(CON), 2019 WL 3488579, at *2 (2d Cir. Aug. 1, 2019). The Second Circuit concluded that "[s]ince the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences [ ] the defendants' age-based Eighth Amendment challenges to their sentences must fail." Id.

16

Accordingly, the Court declines to extend Miller to Petitioner's circumstances. The Court does not find that Petitioner's sentence violates the Eighth Amendment and therefore his request for relief under Section 2255 is DENIED.

CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 275) is DENIED. In addition, Petitioner's motion for extension to file a motion pursuant to 28 U.S.C. § 2255 (D.E. 270) and motion to compel (D.E. 272) are DENIED as MOOT. Because there can be no debate among reasonable jurists that Petitioner was not entitled to relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  6 , 2019
       Central Islip, New York