```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,
                                        MEMORANDUM AND ORDER
          -against-                     04-CR-0209(JS)

LAVAL FARMER,
                    Defendant.
----------------------------------X
APPEARANCES
For the Government:  Anthony Bagnuola, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York  11722

For the Defendant:   Laval Farmer, Pro se
                     #12786-067
                     FCI Bennettsville
                     Federal Correctional Institution
                     P.O. Box 52020
                     Bennettsville, South Carolina  29512
```

SEYBERT, District Judge:

Presently before the Court is the supplemental, Davis-based pro se Section 2255 habeas petition of Laval Farmer ("Petitioner"), seeking to vacate his Section 924(c) conviction, i.e., Count III of the Superseding Indictment. (See Petition, ECF No. 307; see also Reply, ECF No. 330.) The Government opposes the Petion. (See Opp'n, ECF No. 326.) For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

The Court presumes the parties' familiarity with the facts of this case, which are reviewed in the Second Circuit's

October 8, 2009 decision. See United States v. Farmer, 583 F.3d 131, 136-40 (2d Cir. 2009); see also United States v. Farmer, No. 04-CR-0209, 2019 WL 4247629, at *1-2 (E.D.N.Y. Sept. 6, 2019) (hereafter, the "Miller-Based Denial Order")[1] (in denying Petitioner's Miller-based habeas petition (hereafter, the "First Petition"), providing relevant factual and procedural background of case).  For the reader's convenience, the Court provided the following summary.

In February 2006, Petitioner was convicted of six felony offenses related to his membership in a Bloods street gang, i.e., participating in a racketeering conspiracy to commit various violent crimes, including murder, attempted murder, and assault with a dangerous weapon, together with multiple related firearms offenses.  Relevant to the instant Petition, among the counts of conviction were: (i) Count Two, charging murder in aid of racketeering ("VICAR Murder"), in violation of 18 U.S.C. § 1959(a)(1); and (ii) Count Three, charging illegal use of a firearm in relation to the VICAR Murder, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  These charges stemmed from the retaliatory-motivated murder of a 14-year-old boy, Jose White (hereafter, "White"); Petitioner shot and killed White believing him to be a

---

[1] The Miller-Based Denial Order is also found in the Case Docket at ECF No. 294; hereafter, the Court will cite to the docket-version of that Order.

2

member of the Crips, a rival gang,[2] because White was wearing blue clothing, which is the Crips' gang colors. In June 2007, Petitioner was sentenced to a mandatory life sentence on Count Two, and a 25-year sentence on Count Three. (See ECF No. 224.) The Second Circuit affirmed Petitioner's convictions on Counts Two and Three. See Farmer, 583 F.3d 131. The Supreme Court denied Petitioner's petition for writ of certiorari. See Farmer v. United States, 559 U.S. 1058 (2010).

In September 2018, Petitioner filed his first Section 2255 habeas petition, relying upon Miller v. Alabama, 567 U.S. 460 (2012). (See First Petition, ECF No. 275.) Petition argued, notwithstanding he was 19-years-old when he murdered White, since he was not much older than 18-years-old, he should benefit from the Supreme Court's Miller decision, which outlawed mandatory life sentences for minor offenders. A year later, on September 6, 2019, this Court denied the First Petition in its entirety and declined to issue a certificate of appealability. (See ECF No. 294.)

---

[2] Petitioner sought to retaliate against the Crips after Crips members assaulted Petitioner's fellow Bloods member. (See, e.g., Miller-Based Denial Order at 3 ("Specifically, on September 22, 2001, Petitioner travelled to Roosevelt, New York with other members of the Bloods to exact revenge for an assault of a member of VGL[, i.e., the Bloods gang to which Petitioner belonged,] by a member of a rival Crips gang. Petitioner drove past two boys, one dressed in the blue attire of a Crip, fired shots in their direction, and left the scene. As a result of these shots, Petitioner killed the boy dressed in blue, who was [a] fourteen-year-old . . . and was not a member of the Crips.").)

3

While his First Petition was pending, relying upon the Supreme Court's ruling in United States v. Davis, 588 U.S. 445 (2019), Petitioner sought leave to file a successive petition. Davis holds that the so-called "residual clause" in Section 924(c)'s definition of "crime of violence" is unconstitutionally vague. Thus, pursuant to Davis, Petitioner proffered the argument that his conviction on Count Three, i.e., the illegal use of a firearm, was invalid because the underlying offense in Count Two, VICAR Murder, was no longer a "crime of violence." Because the adjudication of the First Petition had not yet become final, the Court of Appeals ruled Petitioner could file his supplemental argument without leave of court. (See 2d Cir. Order, ECF No. 305.) Thus, on April 5, 2021, the instant Petition was transferred to this Court; it is now fully briefed.

## DISCUSSION

I.  Applicable Law

   A.  The Section 2255 Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011). To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence

4

was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018). Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013, aff'd, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" Hoskins, 905 F.3d at 102 (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)). Additionally, in advancing a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence. See Negron v. United States, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing

5

Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (further citation omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

As Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

B. Section 924(c) and the *Davis* Case

> Section 924(c) allows for an enhanced sentence where the defendant used a firearm in the commission of a "crime of violence." 18 U.S.C. § 924(c).  The statute has two definitions of "crime of violence."  The elements clause defines a "crime of violence" as a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The residual clause defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

United States v. Minaya, No. 01-CR-0619, 16-CV-3513, 2025 WL 1126106, at *1 (S.D.N.Y. Apr. 16, 2025).  "Davis held that the residual clause in Section 924(c)(3)(B) is unconstitutionally

6

vague." Id. (citing Davis, 588 U.S. at 470.) "Thus, a petitioner may challenge his Section 924 conviction if he was convicted of a crime of violence as defined in the residual clause." Id. at *4.

II. Application

In seeking to vacate his remaining Section 924(c) conviction, Count III,[3] Petitioner claims:

> My indictment allege[d] that I violated [§] 924(c) during my predicate murder in aid of racketeering offense. That count however (Count Two), does not distinguish between which subpart of § 125.25 [of the New York] state statute I was guilty of having violated. The statute is indivisible and allows conviction for conduct that does not qualify under § 924.

(Petition at 5, ¶11(A).) Petitioner's argument is unavailing. See United States v. K. Davis, 74 F.4th 50, 54 (2d Cir. 2023) (rejecting defendant's "contention that the VICAR murder statute is indivisible", and holding "the modified categorical approach applies to our consideration of whether [defendant's] conviction for murder in aid of racketeering, a substantive VICAR offense, constitutes a crime of violence for purposes of § 924(c)").

---

[3] For completeness, the Court notes Petitioner also seeks the vacatur of Count II, the predicate offense to Count III. (See, e.g., Petition Support Memo, ECF No. 307 at ECF pp.8-28, at 3 (requesting the Counts II and III convictions be vacated); Reply at 1 (same).) For the same reasons discussed herein as to why the vacatur of Count III is not warranted, Petitioner has also failed to show the vacatur of his conviction as to Count II, intentional VICAR murder, is warranted.

7

The predicate offense supporting Petitioner's Section 924(c) conviction under Count III was the intentional VICAR Murder of White, which offense was a separate count of the Superseding Indictment, to wit, Count II. Count II reads:

> On or about September 23, 2001, within the Eastern District of New York, the defendant LAVAL FARMER, also known as "Murder," for the purpose of maintaining and increasing his position in the Bloods, an enterprise engaged in racketeering activity, did knowingly and intentionally murder an individual believed to be a Crips member, in violation of New York Penal Law Section 125.25.

(Superseding Indictment, ECF No. 131 (emphasis added).)

> To determine whether the predicate offense is a crime of violence, courts apply a categorical approach under which they "identify the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions" and "evaluate whether this minimum conduct falls within the definition of a crime of violence under section 924(c)(3)(A)." United States v. Pastore, 83 F.4th 113, 118 (2d Cir. 2023). Where a statute is divisible—in other words, "list[s] elements in the alternative, and thereby define[s] multiple crimes"—courts employ a "modified categorical approach." Id. Under that approach, courts must "identify the specific predicate crime supporting a § 924(c) conviction" by reviewing "a limited class of documents from the record of conviction." [United States v.] Morris, 61 F.4th [311,] 318-19 [(2d Cir. 2023)]; see also Shepard v. United States, 544 U.S. 13, 16 (2005) (stating that in identifying the predicate crime, courts are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by

8

> the trial judge to which the defendant assented"). After identifying the specific predicate crime, courts "compare the elements of the offense of conviction with section 924(c)(3)(A)'s definition of a crime of violence." Pastore, 83 F.4th at 119.

United States v. Jordan, Nos. 19-CR-3032(L), 19-CR-3365(Con.), 19-CR-4070(Con.), 2024 WL 445000, at *1 (2d Cir. Feb. 6, 2024) (summary order); see also K. Davis, 74 F.4th at 54-55. The Court follows the guidance of the Jordan Court.

Count Two of Petitioner's Superseding Indictment is predicated upon murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), a provision of the VICAR statute. (See Superseding Indictment); see also Jordan, 2024 WL 445000, at *3. "VICAR . . . murder is divisible into multiple crimes because it could be predicated on any number of federal and state crimes. Thus, the modified categorical approach applies, under which [the Court] identif[ies] the specific predicate crime," which is the law Petitioner violated during his commission of the VICAR murder offense. Jordan, 2024 WL 445000, at *3 (citing Pastore, 83 F.4th at 119-20). Based upon the instant Superseding Indictment, the specific predicate crime for Count Two is a violation of N.Y.P.L. § 125.25, i.e., New York State's second-degree murder statute; indeed, within the text of Count Two, N.Y.P.L. § 125.25. is identified. (See Superseding Indictment.) Similar to Jordan, here, there is no evidence suggesting a statute other than the one

9

cited in the Superseding Indictment for intentional murder, i.e., N.Y.P.L. § 125.25, could serve as a basis for the second-degree murder charge "for conduct occurring within the racketeering conspiracy time period, as alleged in Count [One] of the [Superseding Indictment]." Id.; (see also Superseding Indictment).

In turn, it is true that N.Y.P.L. § 125.25 sets forth multiple offenses; therefore, the Court must identify the specific subsection that serves as the predicate offense. See Jordan, 2024 WL 445000, at *4; see also K. Davis, 74 F.4th at 55 (employing the "modified categorical approach" in determining whether N.Y.P.L. § 125.25(1) is a "crime of violence"). However, similar to defendant Jordan, who argued the record in his case was "ambiguous as to the specific subsection applicable to his offense" of attempted murder, here "only subsection (1) of N.Y.P.L. § 125.25—which punishes a defendant who has the 'intent to cause the death of another person' and causes the death of such person or of a third person'—can give rise to an [intentional] murder count and applies to [Petitioner's] conduct." Id.; see also K. Davis, 74 F.4th at 55 (highlighting the parallel in language between the subject indictment and "New York's second-degree murder statute"). Therefore, the Court rejects Petitioner's suggestion that certain of the scenarios outlined in N.Y.P.L. § 125.25 can be accomplished

10

nonviolently and, as such, Count Two of the Superseding Indictment did not allege a categorical "crime of violence".

For clarity and, like the Jordan Court, here, the other subsections of N.Y.P.L. § 125.25 cannot apply to Petitioner's conduct. Like the Jordan Court did, this Court rejects as the specific subsections serving as the predicate offense subsections (2) through (4) because those subsections "punish reckless and depraved indifference murder and felony murder, none of which involves a specific intent to kill." Id. (omitting citations; emphasis added). This is so because Count Two specifically charged Petitioner with intentionally murdering White. (See Superseding Indictment, Count Two.) Furthermore, "subsection (5) of N.Y.P.L. § 125.25, which punishes intentional killings in the course of various sex crimes, is inapplicable because [Petitioner's] shooting [and murder of White] did not involve any sex crimes." Jordan, 2024 WL 445000, at *4.

The Court's finding is buttressed by the Second Circuit's affirmation of Petitioner's convictions on Counts Two and Three. In rejecting Petitioner's claims of insufficient evidence to uphold his convictions on Counts Two and Three, the Circuit Court stated, "there was ample evidence that Farmer intended to kill a Crip (and initially believed he had)". Farmer, 583 F.3d at 143 (emphasis added). Similarly, the Circuit Court explained: "[T]he evidence showed that Farmer shot a teenager

11

wearing a Crip color, where Crips might be found. The blunder does not alter <u>the intent</u>." <u>Id.</u> (emphasis added).

The Court's determination is further supported by the Circuit Court's decision in <u>K. Davis</u> and its summary order in <u>Moore v. United States</u>. See <u>K. Davis</u>, 74 F.4th at 55-56 (finding N.Y.P.L § 125.25(1) is a "crime of violence"; stating "[t]here is no question that intentionally causing the death of another person involves the use of force" (quoting <u>Pastore</u>, 36 F.4th at 429; further citation omitted)); <u>Moore v. United Sates</u>, No. 16-3715-PR, 2021 WL 5264270 (2d Cir. Nov. 12, 2021) (summary order) (affirming denial of <u>Davis</u>-based habeas petition; rejecting petitioner's argument that his Section 924(c) conviction, predicated upon a VICAR murder committed in violation of N.Y.P.L § 125.25(1), could not be considered a "crime of violence"; holding "the district court correctly concluded that VICAR intentional murder constitutes a 'crime of violence' for purposes of 18 U.S.C. § 924(c)(3)(A)"). Indeed, before its precedential decision in <u>K. Davis</u>, the Second Circuit noted in <u>Moore</u>: "[O]ur case law makes clear that intentional murder as defined in NYPL § 125.25(1) is itself a crime of violence." 2021 WL 5264270, at *2 n.1 (citing <u>United States v. Scott</u>, 990 F.3d 94, 100 (2d Cir. 2021)).

Further, to the extent Petitioner argues he could have been convicted for behavior constituting reckless or felony murder, as aptly argued by the Government, said argument is "purely

12

hypothetical". (Opp'n at 4.)  Indeed, a jury convicted Petitioner on Count II, which accused him of intentional VICAR Murder, the evidence as to which the Second Circuit found to be sufficient. (See, e.g., Sent'g Hr'g Tr., ECF No. 243, 5:10-13 (stating jury found Petitioner guilty on all six counts in the indictment, including Count II, which charged Petitioner with "intentionally murdering an individual believed to be a Crips member")); Farmer, 583 F.3d at 143 (holding "[G]overnment's evidence satisfied the requirement of the VICAR statute", i.e., Petitioner's intentionally killing of White believing White to be a Crips member was done to advance Petitioner's position within the enterprise-gang).  And, in any event, any mention of recklessness or depravity in the murder of another related to Count I of the Superseding Indictment, which is not at issue here.

-*-*-*-

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to be without merit.  At bottom, given the record of this case, and having considered the relevant case law, the Court finds Petitioner has failed to meet his burden of showing his conviction was in violation of the Constitution or laws of the United States, or otherwise warrants habeas relief pursuant to Section 2255; Petitioner's predicate offense of intentional VICAR Murder (i.e.,

13

Count II) was clearly a crime of violence, thereby properly supporting his Section 924(c) (i.e., Count III) conviction.

## CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 307) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability. See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope, and mark as "CLOSED" the corresponding civil case, Case No. 21-CV-1872.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: October 15, 2025
       Central Islip, New York