UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

                                    <u>MEMORANDUM AND ORDER</u>

        -against-                   04-CR-0209(JS)

LAVAL FARMER,
                    Defendant.
--------------------------------X
APPEARANCES
For the Government: Stephanie Pak, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York  11201

For the Defendant: Laval Farmer, <u>Pro se</u>
                    #12786-067
                    FCI Bennettsville
                    Federal Correctional Institution
                    P.O. Box 52020
                    Bennettsville, South Carolina  29512

SEYBERT, District Judge:

        Currently before the Court is the <u>pro se</u> motion of

Defendant Laval Farmer ("Defendant" or "Farmer") seeking a

sentence reduction pursuant to the First Step Act (the "FSA", the

"Act" or the "First Step Act"), 18 U.S.C. § 3582(c)(1)(A)

(hereafter, the "Motion").[1] (<u>See</u> ECF No. 335; <u>see also</u> Reply, ECF

---

[1] To the extent Defendant's Motion, the Government's Opposition
or this decision uses the terminology "compassionate release", the
Court notes that phrase is not contained in the First Step Act;
rather it is one coined by the courts to characterize a reduction
in sentence pursuant to the Act. <u>See, e.g.</u>, <u>United States v.
Shakur</u>, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020); <u>see also United
States Brooker</u>, 976 F.3d 228, 237 (2d Cir. 2020) (stating the
phrase "compassionate release is a misnomer" as the First Step Act
"in fact speaks of sentence reductions").

No. 351[2]).  Specifically, Defendant asks the Court to reduce his sentence to time served, with a five-year term of supervised release.  (See Reply at 2, 17, 21.)  The Government opposes the Motion.  (See Opp'n, ECF No. 349).  For the following reasons, the Motion is **DENIED** without prejudice.

BACKGROUND

I.   Relevant Factual Background

          The Court presumes the parties' familiarity with the facts of this case, which are provided in the Second Circuit's October 8, 2009 decision.  See United States v. Farmer, 583 F.3d 131, 136-40 (2d Cir. 2009); see also United States v. Farmer, No. 04-CR-0209, 2019 WL 4247629, at *1-2 (E.D.N.Y. Sept. 6, 2019) (hereafter, the "Miller-Based Denial Order")[3] (in denying Petitioner's Miller-based habeas petition, providing relevant factual and procedural background of case); United States v. Farmer, No. 04-CR-0209, 2025 WL 2932773, at *1 (E.D.N.Y. Oct. 15, 2025) (hereafter, the "Davis-Based Denial Order").[4]  For the reader's convenience, the Court provided the following summary.

---

[2]  Herein, the Court will cite to the internal page numbers of Defendant's Motion and Reply.

[3]  The Miller-Based Denial Order is also found in the Case Docket at ECF No. 294.

[4]  The Davis-Based Denial Order is also found in the Case Docket at ECF No. 357.

In February 2006, Defendant was convicted of six felony offenses related to his membership in a set of the Bloods street gang, i.e., participating in a racketeering conspiracy to commit various violent crimes, including murder, attempted murder, and assault with a dangerous weapon, together with multiple related firearms offenses.  Relevant to the instant Motion are Defendant's convictions on Count Two of the Superseding Indictment, i.e., murder in aid of racketeering ("VICAR Murder"), in violation of 18 U.S.C. § 1959(a)(1), and on Count Three, the corresponding Section 924(c) firearms charge.[5]  Those charges stemmed from the retaliatory-motivated murder of a 14-year-old boy, Jose White (hereafter, "White"); Petitioner shot and killed White believing him to be a member of the Crips, a rival gang, because White was wearing blue clothing, which is the Crips' gang colors, even though White had no gang affiliations.  More particularly, the relevant chain-of-events are summarized as follows:

> On the evening of September 22, 2001, the [D]efendant learned that two of his fellow gang members had been hit by a car and beaten with bats by members of the rival Crips gang. That night, while at a party in Glen Cove, New

---

[5] Defendant "was also convicted of an attempted murder and related firearms offenses in connection with his shooting of Jacquel Patterson numerous times; those convictions were later vacated by the Second Circuit in Farmer, 583 F.3d 131."  (Opp'n at 2 n.2.) The Government subsequently elected not to re-try Defendant on the vacated counts pertaining to the attempted murder of Patterson; hence, then-presiding Judge Thomas C. Platt entered an order dismissing those counts.  (See id. at 3; see also Dismissal Order, ECF No. 266.)

York, the [D]efendant told two other Bloods members that he "knew who did it," and the three arranged for a friend's girlfriend to pick them up in a car and bring them to Roosevelt to exact revenge. Before getting into the car, the Defendant confirmed that one of other Bloods "had a burner," a slang term for a gun.

Once in Roosevelt, the [D]efendant requested to carry the gun. As they drove, the [D]efendant saw two boys on bicycles, one of whom was dressed in blue-colored clothing. The [D]efendant directed the driver to pull over and turn off the car's headlights. [Thereafter, t]he [D]efendant exited the car, took a few steps, and fired three shots at the boys from approximately five feet away. One of the boys—Jose Angel White—who was 14 years old, was fatally shot. White was not a member of the Crips; he was an innocent bystander who happened to be wearing the color blue.

After the shooting, the [D]efendant bragged that he had "got a body," until he grew nervous that he would be held responsible for White's murder.

(Opp'n at 2; see also id. at note 1 (stating recitation of the relevant facts "are drawn from the Second Circuit's opinion in United States v. Farmer, 583 F.3d 131 (2d Cir. 2009)").)

## II.  Relevant Procedural Background

In June 2007, Petitioner was sentenced to a mandatory life sentence on Count Two, the VICAR Murder count, for the intentional murder of White, as well as sentenced to 25 years' imprisonment on Count Three, the corresponding Section 924(c) firearms count. (See ECF No. 224.) The Second Circuit affirmed Petitioner's convictions on Counts Two and Three, finding

4

sufficient evidence supported both convictions.  See Farmer, 583 F.3d 131.  The Supreme Court denied Petitioner's petition for writ of certiorari.  See Farmer v. United States, 559 U.S. 1058 (2010).[6]

Defendant is currently 44-years-old and is serving his sentence at Federal Correctional Institution ("FCI") Bennettsville in South Carolina; because he is serving a life sentence, Defendant does not have an anticipated release date.  See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Laval Farmer (BOP Reg. No. 12786-067), https://www.bop.gov/inmateloc/ (last visited Oct. 30, 2025) (identifying Defendant's location as "FCI Bennettsville").

---

[6]  Thereafter, Defendant sought habeas relief.  In September 2018, Petitioner filed his first Section 2255 habeas petition, relying upon Miller v. Alabama, 567 U.S. 460 (2012).  (See First Petition, ECF No. 275.)  Petition argued, notwithstanding he was 19-years-old when he murdered White, since he was not much older than 18-years-old, he should benefit from the Supreme Court's Miller decision, which outlawed mandatory life sentences for minor offenders.  A year later, on September 6, 2019, this Court denied the First Petition in its entirety and declined to issue a certificate of appealability. (See Miller-Based Denial Order.)
While his First Petition was pending, relying upon the Supreme Court's ruling in United States v. Davis, 588 U.S. 445 (2019), Petitioner sought leave to file a successive petition (hereafter, the "Second Petition").  Davis holds the so-called "residual clause" in Section 924(c)'s definition of "crime of violence" is unconstitutionally vague.  Thus, pursuant to Davis, Petitioner argued his conviction on Count Three, i.e., the illegal use of a firearm, was invalid because the underlying offense in Count Two, the VICAR Murder of White, could not be considered a "crime of violence."  In its October 15, 2025 Memorandum and Order, the Court rejected Defendant's Davis-based argument and denied his Second Petition.  (See Davis-Based Denial Order); see also United States v. Laval, No. 04-CR-0209, 2025 WL 2932773 (E.D.N.Y. Oct. 15, 2025) (same).

III. <u>The Instant Motion</u>

On May 15, 2023,[7] Defendant filed his Motion. He claims there are several extraordinary and compelling reasons warranting a reduction in his sentence, <u>to wit</u>: (1) his youth at the time of White's murder, coupled with his troubled childhood (<u>see</u> Motion at 14-38 (addressing youth); <u>see also</u> <u>id.</u> at 4-8 (addressing childhood)); (2) his exceptional rehabilitation (<u>see</u> <u>id.</u> at 9-14, 38); (3) the severity and length of his sentence (<u>see</u> <u>id.</u> at 15, 39); (4) and, COVID-19 Pandemic-related circumstances, <u>i.e.</u>, his medical condition of hypertension and the harsh conditions caused by the implementation of COVID-19 protocols (<u>see</u> <u>id.</u> at 40-43). Further, Defendant argues consideration of the relevant Section 3553(a) Factors weigh strongly in favor of a sentence reduction (<u>see</u> <u>id.</u> at 43-47). In advancing that position, Defendant emphasizes his "excellent disciplinary record over the last 10 years", being disciplinary infraction free during that time (Motion at 44), as well as highlights his assessed low rate of recidivism (<u>see</u> Reply at 15-16).

Defendant supported his Motion with, <u>inter alia</u>: (1) a letters from his sister (<u>see, e.g.,</u> ECF No. 138-139); (2) letters from family friends (<u>see, e.g.,</u> ECF No. 335-1 at ECF pp.141-145);

---

[7]  While dated April 11, 2023, the Motion was mailed May 11, 2023 (<u>see</u> Cert. of Serv., ECF No. 335-1 at ECF p.149), and received by and filed with the Court on May 15, 2023 (<u>see</u> corresponding mailing envelope, ECF No. 335-1 at ECF p.150; <u>see also</u> Motion at 1.)

(3) letters from fellow inmates (see, e.g., ECF No. 335-1 at ECF pp.81-94; ECF No. 350; ECF No. 351 at ECF pp.31-33; ECF No. 354; ECF No. 355); (4) a job offer (see, e.g., ECF No. 335-1 at ECF p.140); (4) reports from various BOP staff (see, e.g., ECF No. 335-1 at ECF pp.68-79); and (5) copious certificates evidencing completion of various courses and programs (see e.g., ECF No. 335 at ECF pp. 140-144; ECF No. 335-1 at ECF pp.3-66; ECF No. 351 at ECF pp.24-29). Defendant also submitted: (6) a May 2, 2005 draft "Personal History" (see ECF No. 335 at ECF pp. 51-86); (7) his grade school report cards (see ECF No. 335 at ECF pp.87-128); (8) his March 2023 BOP "Individualized Needs Plan—Program Review" (see ECF No. 335 at ECF pp.129-133); (9) an April 2022 BOP Progress Report (see ECF No. 335 at ECF pp.134-144); and (10) Defendant's proposed Challenge Program curriculum, entitled "Victim Impact: Listen and Learn Curriculum" (see ECF No. 335-1 at ECF pp.98-114). Additionally, Defendant proffers a re-entry plan, stating he will relocate to South Carolina and live with his sister, where he has prospective employment. (See Motion at 46-47.)

Unsurprisingly, the Government opposes Defendant's Motion. (See Opp'n.) It asserts: (1)(a) as to youth, Defendant acted deliberately, and his murderous act of retribution was both violent and disproportionate to the non-fatal assaults of his fellow gang members (see id. at 5-7); (1)(b) as to his childhood, this is not the rare case of prior trauma warranting compassionate

release (*see* *id.* at 6), and the sentencing court took into consideration Defendant's upbringing "to the extent possible under the circumstances in which a life sentence was required to be imposed" (*id.* at 7); (2) as to rehabilitation, that by itself is insufficient to be extraordinary and compelling and, nonetheless, is expected of all inmates (*see* *id.* at 8); (3) as to length and severity of Defendant's sentence, any disparity with his co-defendants' sentences is neither extraordinary nor compelling and, in any event, the co-defendants' roles were not as significant as Defendant's who was "the triggerman for the senseless murder of a child" (*id.* at 9); and (4) as to the Pandemic-based arguments, *inter alia*, (i) Defendant's hypertension is not the type of medical condition that places him at such a high risk as to warrant early release (*see* *id.* at 7), and (ii) given the introduction of COVID vaccines, the heightened risk COVID-19 created has significantly subsided, thereby diminishing its consideration as an extraordinary and compelling reason to reduce sentences (*see* *id.* at 8). Additionally, the Government maintains the Section 3553(a) Factors "override any possible reasons for release due to the [D]efendant's crimes being of a particularly heinous nature: the senseless murder of a child." (*Id.* at 9; *see also* *id.* at 10 (arguing further "[t]his conduct ranks among the most serious of criminal conduct and requires a severe sentence to both punish and deter").)

DISCUSSION

I.    Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).    The FSA, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).    "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)); United States v. Rodriguez, 147 F.4th 217, 222 (2d Cir. 2025) (same).    "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section

9

3582 application[, i.e., a motion for compassionate release]."
United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3
(E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No.
89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)).  And,
"[i]f any one requirement is not satisfied, the district court may
deny the motion without considering the remaining requirements."
Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72–73);
see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL
783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming
district court's denial of compassionate release where lower
court's denial was based solely on applying Section 3553(a)
Factors, which it found did not warrant consideration of proffered
extraordinary and compelling reasons; quoting Keitt).

        Where exhaustion is satisfied, in their consideration of
motions brought pursuant to the FSA, courts are to consider
whether a sentence "reduction is consistent with applicable policy
statements issued by the Sentencing Commission", 18 U.S.C.
§ 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 ( "Policy Statement
1B1.13"), and whether the relevant Section 3553(a) Factors favor
such a reduction.  See United States v. Donato, No. 95-CR-0223,
2024 WL 1513646, *5 (E.D.N.Y. Apr. 18, 2024);[8] see also Keitt, 21

---

[8]  In Donato, Judge Azrack of this District explained:

        In 2020, the Second Circuit determined that
        the applicable policy statement—U.S.S.G.

---

§ 1B1.13—does not apply to motions for compassionate release filed by defendants because the statement's language referenced only motions filed by the Director of the Bureau of Prisons.  <u>See United States v. Brooker</u>, 976 F.3d 228, 235-37 (2d Cir. 2020). [T]he Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants.  <u>See</u> U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or <u>the defendant</u>, . . . the court may reduce a term of imprisonment . . . .") (emphasis added). As a result, courts in this circuit have determined that "<u>Brooker</u> does not apply to the new version of Policy Statement 1B1.13 . . . . [and that] to grant a motion for compassionate release, a court must now . . . find that granting such relief is consistent with Policy Statement 1B1.13."  <u>United States v. Feliz</u>, [No. 16-CR-0809,] 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); <u>see also United States v. Andrews</u>, [No. 01-CR-0450,] 2023 WL 8477993, at **2-5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release).  Accordingly, the amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.  <u>See generally</u> U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023); <u>see also</u> <u>United States v. Lopez</u>, [No. 16-CR-0317,] 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

<u>Donato</u>, 2024 WL 1513646, at n.10; <u>see also</u> <u>Feliz</u>, 2023 WL 8275897, at *1 (stating recent amendments, "which updated Section 1B1.13 of the U.S. Sentencing Guidelines Manual to harmonize the provision with the First Step Act of 2018, have changed the legal framework promulgated by the Second Circuit in <u>United States v. Brooker</u>, 976 F.3d 228 (2020)"), and at *4 ("<u>Brooker</u> does not apply to the new version of Policy Statement 1B1.13 because the Policy Statement,

F.4th at 71.  However, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'"  United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020) (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also U.S.S.G. § 1B1.13(d).  Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."  United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also Pimentel, 2025 WL 783730, at *2; United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same).  "[A] statement that the district court has considered the statutory factors is sufficient."  United States v.

_____

as amended, is now applicable to compassionate release motions brought in court by defendants. . . .  Accordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, . . . also find that granting such relief is consistent with Policy Statement 1B1.13, which sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist." (internal quotation marks omitted); United States v. Torres-Teyer, No. 01-CR-0021, 2025 WL 2776048, at * 3 (S.D.N.Y. Sept. 30, 2025) (stating a "defendant must show [] extraordinary and compelling reasons that, consistent with Policy Statement 1B1.13, warrant a sentence reduction . . . . " (citing Feliz, 2023 WL 8275897, at *2-4 & n.3; further citation omitted)).

_Torres_, No. 21-2511-CR, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) (summary order) (quoting _United States v. Gammarano_, 321 F.3d 311, 315-16 (2d Cir. 2003)).

"The defendant bears the burden of showing that the circumstances warrant a sentence reduction." _United States v. Sellick_, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing _United States v. Jones_, 17 F.4th 371, 375 (2d Cir. 2021)); _see also United States v. Friedlander_, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting _United States v. Patterson_, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)). "A district court's discretion in deciding a compassionate release motion—as in all sentencing matters—is broad." _Rodriguez_, 147 F.4th at 222 (quoting _Brooker_, 976 F.3d at 237) (citation modified).

II. Application

A. Exhaustion

Defendant asserts he requested compassionate release from the warden of U.S. Penitentiary Canaan ("USP Canaan"), the facility where he was housed when he moved for compassionate release. (_See_ Motion at 47; _see also_, Ex. F, ECF No. 335-1 at ECF pp.126-136 (providing, _inter alia_, Defendant's request and warden's response thereto), _attached to_ Motion.) The warden denied

13

Defendant's application.    (See id. at ECF p.130.)    Other than acknowledging the exhaustion requirement (see Opp'n at 4), the Government does little more that assume Defendant has satisfied this threshold requirement (see id.).    Hence, considering Defendant's proffered Exhibit F and the Government's non-response to Defendant's claimed exhaustion of his administrative remedies, the Court finds Defendant has satisfied the exhaustion requirement and proceeds "to consider the merits" of his Motion.  See generally United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); see also United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting Saladino; collecting cases)).

  B.    Defendant's Proffered Extraordinary and
        Compelling Circumstances

        In accordance with Policy Statement 1B1.13, the Court considers Defendant's claims of extraordinary and compelling circumstances warranting a sentence reduction.  For the reasons articulated below, it finds Defendant's proffered circumstances unavailing.

1.    Defendant's Upbringing and Youth at
      Time of White's Murder

Defendant relies upon his upbringing and youth when he murdered White as an extraordinary and compelling reason for granting him a sentence reduction.  In advancing this position, Defendant relies primarily on three non-binding cases:  United States v. Cruz, No. 94-CR-0112, 2021 WL 1326851 (D. Conn. Apr. 9, 2021); United States v. Morris, No. 99-CR-0264, 2022 WL 3703201 (D. Conn. Aug. 26, 2022); and, United States v. Ramsay, 538 F. Supp.3d 407 (S.D.N.Y. 2021).  In each of those cases, where the respective court was considering a motion for compassionate release: the defendant had been sentenced to life imprisonment; the defendant had been 18-years-old at the time of the underlying murder offense; the judge considered the defendant's youth at the time of the underlying offense; and, the judge found, in combination with other factors, defendant's youth was an extraordinary and compelling reason warranting a sentence reduction.  Yet, amended Policy Statement 1B1.13 "does not list youth among its list of suggested extraordinary and compelling reasons, although in certain circumstances it may fall within the catch-all provision" of § 1B1.13(b).[9]  United States v. Haylock,

---

[9]  As the Haylock Court explained:

> [I]n the Guidelines amendments that became effective November 1, 2024, the Sentencing Commission amended the policy statement at

15

No. 19-CR-0846, 2024 WL 4691023, at *7 (S.D.N.Y. Nov. 6, 2024);
see also U.S.S.G. § 1B1.13(b)(5) (Extraordinary and Compelling
Reasons: Other Reasons).    Nor is the Court persuaded that
Defendant's youth at the time of the White murder is an
extraordinary and compelling reason in this instance.

In denying a motion for sentence reduction where the
defendant pressed as an extraordinary and compelling reason his

---

U.S.S.G. § 5H1.1 to note that "[a] downward
departure also may be warranted due to the
defendant's youthfulness at the time of the
offense or prior offenses."    U.S.S.G.,
Amendment 829.    <u>At this time, however,
Amendment 829 has not been made retroactive,</u>
and according to U.S.S.G. § 1B1.13,

Limitation on Changes in Law.—
Except as provided in subsection
(b)(6), a change in the law
(including an amendment to the
Guidelines Manual that has not been
made retroactive) shall not be
considered for purposes of
determining whether an
extraordinary and compelling reason
exists under this policy statement.
However, if a defendant otherwise
establishes that extraordinary and
compelling reasons warrant a
sentence reduction under this
policy statement, a change in the
law (including an amendment to the
Guidelines Manual that has not been
made retroactive) may be considered
for purposes of determining the
extent of any such reduction.

Haylock, 2024 WL 4691023, at *7 (quoting U.S.S.G. § 1B1.13(c))
(emphasis added).

youth at the time of his offenses, Honorable Katherine Polk Failla

of the Southern District of New York wrote:

> [T]his Court surveyed the relevant case law
> and concluded that "[t]hough the Second
> Circuit has not specifically opined on the
> issue, courts within the Second Circuit have
> accepted, and rejected, youth as a valid basis
> for a sentence reduction under
> § 3582(c)(1)(A)(i)." United States v.
> Rosario, No. 96 Cr. 126-23 (KPF), 2024 WL
> 3521851, at *7 (S.D.N.Y. July 24, 2024)
> (collecting cases). The Court also found that
> a "common theme among those courts that have
> allowed reductions on the basis of youth is
> that the offenses of conviction were 'split-
> second' and 'hot-headed.'" Id. at *7 (quoting
> United States v. Ramirez, 571 F. Supp. 3d 40,
> 48-49 (S.D.N.Y. 2021)); see also United States
> v. Delvalle, No. 17 Cr. 314 (VM), 2024 WL
> 3934989, at *4 (S.D.N.Y. Aug. 23, 2024)
> ("Courts in this District have denied similar
> motions for compassionate release based on the
> defendant's age, where the defendant's actions
> were calculated and deliberate and not the
> product of duress." (collecting cases)). Mr.
> Haylock's offense conduct in this case, by
> contrast, did not implicate "high-pressure,
> time-sensitive, emotional contexts." United
> States v. Golding, No. 05 Cr. 538 (JSR), 2022
> WL 2985014, at *3 (S.D.N.Y. July 27, 2022)
> (internal citations omitted).

2024 WL 4691023, at *7. The same holds true here; Defendant's

murder of White did not occur in a high-pressured, time-sensitive,

emotional context. Rather, as the Government stated:

> [D]efendant's murder was calculated and
> premeditated. Appreciable time elapsed between
> the [D]efendant deciding to exact revenge on
> whoever assaulted his fellow gang member and
> firing the shot at White. The [D]efendant's
> retaliation was not only violent but
> incredibly disproportionate in fatally

17

> wounding an innocent bystander to seek revenge
> for his fellow gang members' non-fatal
> assault. The defendant took advantage of
> having the time, means, and opportunity to
> arrange for a friend's girlfriend to pick him
> and his co-conspirators up in Glen Cove and
> drive approximately 30 minutes to Roosevelt.
> The [D]efendant's actions when he arrived in
> Roosevelt also show careful, calculated
> planning inconsistent with the mind of a
> child. For example, the [D]efendant told the
> driver of the car to slow down and turn off
> the headlights to avoid attracting attention
> as he stepped out the car to shoot at White.
> Such deliberation negates the [D]efendant's
> age as a potential mitigating factor.

(Opp'n at 5 (citations omitted).) Having extensively reviewed the record, the Court agrees. And, like the Haylock Court, "[f]or the avoidance of doubt, and on the chance that the Sentencing Commission may later make Amendment 829 retroactive or add youth to the factors listed in [Policy Statement] 1B1.13, this Court concludes that, on this record, [Defendant's] age does not constitute an extraordinary and compelling reason warranting a . . . sentence reduction." Haylock, 2024 WL 4691023, at *7; see also Delvalle, 2024 WL 3934989, at *4 (rejecting defendant's youth as an extraordinary and compelling reason where defendant's "actions were premeditated and deliberate") (collecting cases); United States v. Price, No. 05-CR-0492, 2023 WL 4850995, at *2 (E.D.N.Y. July 28, 2023) (finding teenage defendant's conduct as a leader of a violent drug trafficking organization could not be "written off as youthful folly", but reflected "calculated

decisions to engage in violent activity"); cf. Glynn, 2022 WL
562652, at *5 (finding 22-year-old defendant's "difficult
upbringing and relative youth" did not "explain away the reality
that he committed a calculated murder for personal gain" or justify
reducing his life sentence for murder).[10]

### 2. Defendant's Rehabilitation

Defendant states "he unequivocally accepts
responsibility for his criminal conduct". (Motion at 2 (accepting
"full responsibility for his crimes and irrational choices that he
made as [a] teenager"); see also id. at 38 ("accepting
responsibility for his actions, and acknowledging the impact that
his crimes and his incarceration have had on him and those around
him"), and at 45 (stating "sincere remorse for his crimes" and
"recogniz[ing] the recklessness that he exhibited" and "the pain
it has caused to both his victims and family"); Reply at 1 (stating
remorsefulness "not simply because he is in prison but . . .
because he understands that it was his actions that resulted in
pain and suffering for so many people including . . . White").)
He recognizes his rehabilitation, which Defendant asserts is
extraordinary, is to be considered in conjunction with other

---

[10] The Delvalle Court noted the Glynn Court, nevertheless, "reduced
the defendant's sentence based on two alternative circumstances
Delvalle lacks", i.e., Glynn's "[then-]recent diagnosis of chronic
kidney disease (which was exacerbated by COVID-19) coupled with an
'exemplary record' of rehabilitation during his 20 years in
prison". Delvalle, 2024 WL 3934989, at *4 n.3 (emphasis added).

factors in determining whether a sentence reduction is warranted. (See id. at 2, 3 (asserting it is unlikely any other prisoner "has done as much in this regard as Mr. Farmer").)

The Court begins by reiterating that, notwithstanding its broad discretion in considering "all possible reasons for compassionate release," "rehabilitation alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t) (cleaned up)); see also Policy Statement 1B1.13(d) ("Pursuant to 28 U.S.C. § 994(t), rehabilitation on the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Moreover, "[w]hat constitutes rehabilitation is left to the [c]ourt's discretion, but courts in this district have considered the following factors: [1] the defendant's 'maintenance of familial and societal relationships; [2] letters of support both from community members and prison staff; [3] conduct and disciplinary records while incarcerated; . . . [4] any achievements and education obtained while incarcerated; . . . [5] gains in maturity[;] and [6] other clear signs that a defendant's incarceration has had rehabilitative value'." United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, at *5 (E.D.N.Y. May 23, 2024) (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added); see also, e.g., United States v. Qadar, No. 00-CR-0603, 2021 WL

3087956, at *10 (E.D.N.Y. July 22, 2021) (same).  "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his . . . actions and acted to reintegrate [him]self into a productive society.'" Byam, 2024 WL 1556741, at *7 (quoting United States v. Blake, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000)).

Recently, in denying a compassionate release motion where the defendant showed "significant strides in his rehabilitation", this Court, nonetheless, found the defendant's "commendable rehabilitation [wa]s not enough".  United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *7 (E.D.N.Y. Apr. 16, 2025).  So, too, does the Court find that to be the case here; Defendant's rehabilitation is not enough to establish an extraordinary and compelling reason warranting a sentence reduction.

In Latney, the defendant: presented evidence of maintaining familiar relationships; provided letters of support from a prison chaplain, an attorney, and fellow inmates; and, submitted a letter of contrition.[11]  See id. at *7-8.  While the

_____

[11]    Latney had a blemish-free disciplinary record while incarcerated.  See Latney, 2025 WL 1126474, at *8 n.3.  In comparison, Defendant admits that "[w]hile in prison I've had incident reports for weapons and assaults landing me in the SHU, SMU, lost [sic] of privilege contact with family and love ones . . ." (Def.'s Jan. 8, 2014 Readiness Statement, ECF No. 335-1 at ECF p.1.)  "However, he has not been cited for any misbehavior in over 13 years.  His last incident report was 2010." (Motion at

Court found defendant Latney's rehabilitative efforts "laudable",
his rehabilitation alone did not warrant a sentence reduction.
<u>Id.</u> at *8.   Juxtaposed against Latney's efforts, Defendant's
rehabilitative efforts require the same result.   In the instant
case, Defendant has demonstrated: the maintenance of familial
relationships; letters of support from inmates; various positive
staff acknowledgments; and, other clear signs his incarceration
has had extraordinary rehabilitative value.   Yet, as the Court
explained in <u>Latney</u>, which explanation applies equally here:

> As the Government persuasively argue[d in
> opposing the granting of compassionate
> release]:
>
> [S]ince rehabilitation and "model
> prison conduct is expected" of federal
> inmates, the [D]efendant should not be
> granted compassionate release on this
> basis.  <u>United States v. Veliu</u>, No.
> 17-CR-0404, 2022 WL 2484240, at *5
> (E.D.N.Y. July 6, 2022); <u>see also</u>
> <u>United States v. Reyes</u>, No. 20-3285,
> 2022 WL 1669388, at *1 (2d Cir. May
> 26, 2022) (summary order) (affirming
> compassionate release denial where
> district court "acknowledged [the
> defendant's] efforts toward
> rehabilitation, [but] nevertheless
> found that the [S]ection 3553(a)
> [F]actors weighed heavily against a
> sentence reduction" based on the
> defendant's conduct); <u>United States v.</u>
> <u>Garcia</u>, No. 19-CR-210 (CS), 2022 WL
> 672758, at *2 (S.D.N.Y. Mar. 7, 2022)
> ("Maintaining good conduct in prison

---

15; <u>see also</u> <u>id.</u> at 44.)   The Government does not dispute this
claim.  (<u>See</u> Opp'n, <u>in toto</u>.)

> is not uncommon, and indeed is
> expected.").
>
> The Court cannot disagree.

Id. at *8 (omitting internal citation). Because "rehabilitation
is expected of a federal inmate", id. at *3, even though this Court
considered Latney's rehabilitation when deciding his compassionate
release motion, it found said rehabilitation was insufficient to
meet his burden of showing extraordinary and compelling
circumstances. See id. The Court elucidated:

> Here, the only factor Latney is able to
> demonstrate as within the purview of being
> "extraordinary and compelling" is his
> rehabilitative efforts. However, laudable as
> those efforts are -- and, the Court finds
> Latney's efforts are laudable in this instance
> -- it is also well-settled that the Court may
> not make an "extraordinary and compelling"
> finding based solely upon a defendant's
> rehabilitation. See Brooker, 976 F.3d at
> 237-38 ("The only statutory limit on what a
> court may consider to be extraordinary and
> compelling is that '[r]ehabilitation . . .
> alone shall not be considered an extraordinary
> and compelling reason.'") (citing 28 U.S.C.
> § 994(t); emphasis added in Brooker); cf.,
> e.g., United States v. Russo, 643 F. Supp. 3d
> 325, 332 [(E.D.N.Y. 2022)] ("[R]ehabilitation
> alone would not suffice as extraordinary and
> compelling, but it weighs in [defendant's]
> favor alongside consideration of multiple
> other factors."). Thus, because the Court
> finds Defendant's other proffered reasons for
> granting his Motion are neither extraordinary
> nor compelling, the weight his rehabilitation
> efforts might have added to the Court's
> calculus of the totality of the circumstances
> is without effect; hence, there is no ground
> to reduce Defendant's sentence.

Id.

For the reasons articulated in Latney, which reasons the Court incorporates by reference herein, the same holds true in the present case.  "[A] productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction here." United States v. Baptiste, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) (citation modified); see also, e.g., Alvarez, 2020 WL 4904586, at *7 (recognizing "model prison conduct is expected").  Because, as discussed supra and infra, the Court finds Defendant's other proffered reasons for granting him compassionate release--i.e., Defendant's youthfulness at time offense occurred; severity and length of his sentence; his medical condition of hypertension; and, harsh conditions of confinement--are neither extraordinary nor compelling, the weight of his rehabilitation efforts, while laudable, do not tip the scale in favor of a sentence reduction. See, e.g., United States v. Rodriguez, No. 96-CR-0959, 2025 WL 212766, at *5 (S.D.N.Y. Jan. 26, 2025) ("While Rodriguez's efforts at rehabilitation through completing numerous educational programs (and recently receiving his GED), serving as a mentor to other inmates, and maintaining a relationship with his family are commendable, rehabilitation is 'not, by itself, an extraordinary and compelling reason' for a sentence reduction." (citations omitted)); United States v. Tillman, No. 13-CR-0362, 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) ("While the Court commends Tillman for apparently

24

participating in positive prison programs, obtaining a GED, and maintaining a clean disciplinary record, as well as for his plans to transition back to society, the Court does not find this progress and future plans to constitute extraordinary and compelling reasons meriting release even in conjunction with [consideration of other factors.]").

      3.   The Severity and Length of Defendant's Sentence

Defendant generally argues his life sentence "is longer than necessary in this case to achieve the objectives that a sentence be sufficient but not greater than necessary to achieve the goals of sentencing." (Motion at 4; see also, e.g., id. at 9.) He also raises a "stacking" argument, asserting he "would not be sentenced so harshly today as he was originally sentenced as to the 924(c) counts." (Id. at 39 (claiming "[i]f sentenced today, Farmer would not be subject to such a harsh sentence under § 924(c)(1)(C)(i) on the three 924(c) counts"); see also id. at 15.) He does not meaningfully develop his "stacking" argument.[12] Nonetheless, the Court finds both arguments to be unpersuasive.

---

[12] The Court notes, Defendant also claims, in passing, a disparity in his sentence. (See Motion at 43 (asserting that, in deciding his Motion, the Court should consider, inter alia, the sentencing disparities with Defendant's co-defendants).) As an initial matter, liberally reading Defendant's Motion, there is an absence of any meaningful discussion of disparity in sentencing between Defendant and his co-defendants. Thus, even if this Court were to consider such a disparity, because Defendant failed to develop a sentence-disparity argument regarding his co-defendants, there is an absence of relevant information, e.g., the factors which led to

25

As to the length of Defendant's sentence:  Like the <u>Glynn</u>

Court, given the "the mandatory nature of [Defendant's] sentence"

for murder in aid of racketeering, <u>i.e.</u>, Count Two, the Court finds

it "does not constitute an extraordinary and compelling reason by

itself" or in combination with other circumstances.  <u>Glynn</u>, 2022

WL 562652, at *5; <u>see also, e.g.</u>, <u>United States v. Santos</u>, No.

01-CR-0537, 2024 WL 4212024, at *3 (E.D.N.Y. Sept. 17, 2024)

(finding, where defendant was convicted of two counts of

intentional killing in furtherance of a criminal enterprise and

one count of using a firearm during a crime of violence, a sentence

of life in prison was not unusually long), <u>reconsideration denied</u>,

---

his co-defendants' respective sentences, which absence of
information "stymies the Court's ability to assess whether there
is any unwarranted disparity in Defendant's sentence." <u>Yong</u>, 2024
WL 3648259, at *6.  Moreover, "a court is not required to consider
disparities between co-defendants." <u>United States v. Johnson</u>, 671
F. Supp. 3d 265, 283 (E.D.N.Y. 2023) (citing <u>United States v.
Frias</u>, 521 F.3d 229, 236 (2d Cir. 2008); <u>United States v. Medina</u>,
607 F. App'x 60, 61 (2d Cir. 2015) (summary order)).

Even if Defendant had presented a fulsome
disparity-in-sentencing argument, the Court agrees with, and
adopts, the Government's position in opposition:  "Courts have
declined to reduce sentences or release defendants when the
defendants' roles in the offenses are significant, especially in
comparison to the roles of their codefendants."  (Opp'n at 9
(citing <u>United States v. Westley</u>, No. 19-CR-3826 (CON), 2021 WL
4888867, at *3 (2d Cir. Oct. 20, 2021); further citation omitted).)
As the Government contends, and with which the Court concurs, here,
Defendant: "was the triggerman"; "planned the murder"; and
"demanded to be the shooter".  (<u>Id.</u>); <u>see also</u> <u>Farmer</u>, 583 F.3d at
137.  Hence, "[a]ny sentencing disparity was . . . justified by
the [D]efendant's comparatively appalling conduct." (<u>Id.</u>)  Thus,
Defendant's purported disparity-compared-to-co-defendants
position holds no sway.

2024 WL 4424418 (E.D.N.Y. Oct. 4, 2024); United States v. Frias, No. 01-CR-0307, 2024 WL 5155128, at *1 (S.D.N.Y. Dec. 18, 2024) (finding defendant sentenced to life in prison for premeditated murder failed to show sentence "was an unusually long sentence for this offense"); cf. United States v. Baker, No. 97-CR-0877, 2025 WL 2733358, at *5 (E.D.N.Y. Sept. 25, 2025) ("[H]ere, there would be no disparity, let alone a 'gross' one, between the 50-year sentence [d]efendant is currently serving and the sentence likely to be imposed if [d]efendant were sentenced now, especially considering [d]efendant's individualized circumstances, since, as the Government aptly argues, the post-Booker advisory Guidelines range to which [d]efendant would be subjected continues to be a range of life imprisonment."); Rodriguez, 2025 WL 212766, at *1-2 (rejecting defendant's unusually-long-sentence argument where, post-Booker, defendant remained subject to a mandatory statutory term of life imprisonment; therefore, defendant did not present any potential disparity in sentencing).

And, regarding Defendant's sentence on Count Three, the Section 924(c) firearm conviction, as the Circuit Court explained, Section 924(c)(1)(A)(iii) "does not specify a maximum sentence" and "the district court was permitted to impose a sentence above the ten-year mandatory minimum." Id. Moreover, in rejecting Defendant's argument that his 25-year sentence on Count Three exceeded a statutory maximum, the Second Circuit further noted:

It appears that Farmer is entitled to
resentencing on Count Three in light of <u>United
States v. Williams</u>, 558 F.3d 166, 168 (2d Cir.
2009), which held that "the mandatory minimum
sentence under Section 924(c)(1)(A) is . . .
inapplicable where the defendant is subject to
a longer mandatory minimum sentence for a[n]
. . . offense that is part of the same criminal
transaction or set of operative facts as the
firearm offense." Farmer faced a mandatory
life sentence for the White murder, the
offense underlying the [section] 924(c)
conviction. However, Farmer did not raise
this issue in his brief or at oral argument,
perhaps because the district court's
imposition of a 25-year sentence suggests that
a remand under <u>Williams</u> would be futile (<u>or
because Farmer faces a life sentence in any
event</u>).

<u>Id.</u> at n.9 (emphasis added). Given that likely outcome, the
Circuit Court declined to reach the issue. <u>Id.</u> For the same
reasons, this Court declines to now further consider the length of
the sentence imposed for Count Three. <u>See, e.g.</u>, <u>United States v.
Riley</u>, 777 F. Supp. 3d 165, 172 (S.D.N.Y. 2025) ("Given the
multiple concurrent life sentences unrelated to his firearms
charges, changes to the additional § 924(c) convictions, which
must run consecutively to the life sentences, <u>would have no
practical impact on [defendant's] overall sentence</u>. Accordingly,
any changes to the § 924(c) terms running consecutively to the
life sentences would not create a 'gross disparity' constituting
an extraordinary and compelling reason for sentence reduction."
(citations omitted; emphasis added)); <u>see also</u> <u>Rodriguez v. United
States</u>, No. 11-CR-0755, 2024 WL 3966700, at *8 (S.D.N.Y. Aug. 28,

2024) ("[G]iven the multiple terms of life imprisonment that Mr. Rodriguez received, the changes wrought by the First Step Act [to § 924(c)] would not 'produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed,' and thus do not qualify as an extraordinary and compelling circumstance."); cf. Al-Owhali v. United States, 36 F.4th 461, 463 (2d Cir. 2022) ("We hold that a court may exercise its discretion under the concurrent sentence doctrine to decline to review the merits of a claim on collateral review when the challenged conviction's sentence runs consecutively to one or more unchallenged life sentences.").

As to Defendant's related stacking argument, it is without merit.  Given the Second Circuit's vacatur of Defendant's attempted-murder conviction charged in Count Four, and the related firearm offenses charged in Counts Five and Six, see Farmer, 583 F.3d at 148, which charges the Government declined to pursue upon remand, what remains is the single Section 924(c) conviction, i.e., Count Three, which was Defendant's first—and, now, only--Section 924(c) conviction.  See id. at 150.  Thus, quite simply, with Counts Four, Five, and Six having been vacated, nothing remains to be stacked; indeed, the result is that no stacking has occurred. Therefore, Defendant's stacking argument is baseless.

### 4. Pandemic-Related Circumstances

#### a. Defendant's Hypertension

Defendant contends he suffers from hypertension; however, suffering from that condition in this instance fails to rise to the level warranting compassionate release. See, e.g., United States v. Gerald, No. 13-CR-0141, 2024 WL 4694004, at *6 (E.D.N.Y. Nov. 6, 2024) (denying compassionate release where "there is no indication Defendant's hypertension and other identified medical conditions are not well-controlled with medication and necessary medical care provided by [the federal correctional facility]" and there is nothing "in the record showing Defendant is not fully ambulatory and engaging in all normal activities of daily living"); see also United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *6 (E.D.N.Y. (Aug. 5, 2024) (denying compassionate release where record presented no reason to conclude defendant's hypertension was not being properly addressed by the BOP) (collecting cases). Indeed, upon the record presented, which does not include any of Defendant's medical records,[13]

---

[13] See, e.g., Yong, 2024 WL 3648259, at *6 ("[I]n considering [d]efendant's health condition, i.e., hypertension, and its management, the Court notes [d]efendant has not provided any medical records substantiating the condition he asserts he suffers; yet, it is his burden to prove compassionate release is warranted."); see also United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *4 (E.D.N.Y. May 31, 2024) (finding, where defendant did not provide any medical records substantiating the conditions from which he asserted he suffered, defendant failed to meet his burden of showing entitlement to compassionate release

Defendant has failed to show his medical condition "so incapacitate[d] him as to warrant a reduction of his sentence." United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to [Policy Statement 1B1.13], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."); see also United States v. Delacruz Santana, No. 16-CR-0337, 2024 WL 4449443, at *6 (E.D.N.Y. Oct. 2, 2024) (denying compassionate release where defendant "d[id] not indicate that his ability to provide self-care . . . ha[d] been substantially diminished by his illnesses" and stating, "[w]here such evidence is lacking, courts within the Second Circuit have routinely denied compassionate release motions" (collecting cases)); United States v. Brown, No. 12-CR-0120, 2024 WL 1639926, at *2 (E.D.N.Y. Apr. 16, 2024) (denying compassionate release where defendant "d[id] not allege that his health conditions—hypertension, high cholesterol, and unspecified 'other conditions'—[we]re terminal, diminish[ed] his ability to provide self-care, or require[d] long-term or specialized care that [wa]s not being provided"); United States v. Mohammed, Nos. 18-CR-0509, 20-CR-0581, 2024 WL 2701639, at *2-3 (E.D.N.Y. May 18, 2024) (denying compassionate

---

based upon those purported medical conditions) (citing Brown, 2024 WL 1639926, at *3).

release where defendant failed to meet the Guidelines "Medical Circumstances" criteria, i.e., U.S.S.G. § 1B1.13(b)(1))); United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023) ("[C]ourts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release.") (quoting United States v. Jones, No. 02-CR-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (collecting cases)). Therefore, this avenue offered as a road to relief is a 'dead end'.

### b. Complaints of Harsh Conditions

Defendant makes general, unsubstantiated complaints regarding the conditions to which he was exposed while housed at USP Canaan. (See Motion at 40 (asserting to have "been living under extreme conditions that this Court can consider").) He asserts he "has experienced unusually harsh conditions of confinement as a consequence of the severe lockdown measures undertaken by the BOP to control the spread of COVID-19 in prison." (Id. at 42; see also id. at 43 (complaining that lockdowns prevented Defendant from "seeing family and having any meaningful social contact").)

However, to the extent the Pandemic has made Defendant's incarceration more punitive than anticipated, this Court has repeatedly stated:

> "[T]hese hardships do not set [him] apart from the rest of the BOP inmate population and therefore do not, alone, constitute

32

extraordinary and compelling reasons for his release.'" <u>United States v. Johnson</u>, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)); <u>see also, e.g.</u>, <u>United States v. Veliu</u>, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions of confinement during the pandemic [do not] give rise to extraordinary and compelling circumstances. Although the Court acknowledges that 'the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting <u>United States v. Johnson</u>, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); <u>United States v. Pinto-Thomaz</u>, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. <u>See, e.g.</u>, <u>United States v. Martinez</u>, No.03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)). Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate release.

<u>Yong</u>, 2024 WL 3648259, at *7; <u>see also</u> <u>Santana</u>, 2025 WL 1940370, at *4 (same); <u>Latney</u>, 2025 WL 1126474, at *6 (same); <u>United States</u>

v. Brown, No. 18-CR-0604, 2024 WL 4790165, at *5 (E.D.N.Y. Nov. 14, 2024) (same); United States v. Hernandez, No. 04-CR-0939, 2024 WL 4450851, at *4 (E.D.N.Y. Oct. 9, 2024) (same); United States v. Moss, No. 14-CR-0147, 2024 WL 3718909, at *5 (E.D.N.Y. Aug. 7, 2024) (same); United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *6 (E.D.N.Y. May 31, 2024) (same).

Moreover, because the COVID-19 Public Health Emergency ended on May 11, 2023, it is no longer necessary for the BOP to engage in across-the-board special operations. See Wagner, 2024 WL 2801981, at *5 (citations omitted). Indeed, "the Court presumes the BOP has returned to operating [Defendant's current facility] without COVID-19-related precautions, rendering this consideration of little weight." Id. (citing Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance)); see also Latney, 2025 WL 1126474, at *5 (same; quoting Wagner). Upon consideration of Defendant's harshness argument, the Court finds it unavailing.

C.    The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Keitt, 21 F.4th at 73 n.4 (noting "a district court may rely solely

34

on the § 3553(a) factors when denying defendant's motion for compassionate release"); United States v. Andrews, No. 23-8046-CR, 2025 WL 2938044, at *3 (2d Cir. Oct. 16, 2025) (summary order) (same; quoting Keitt); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); United States v. Mayes, No. 23-6077-CR, 2024 WL 2990909, at *1 (2d Cir. June 14, 2024) (summary order) (same; quoting Jones).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).

United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

In asserting the Section 3553(a) Factors weigh in his favor, Defendant argues: (1) at the time of the VICAR Murder, he "was a teenager and had cognitive impairments" (Motion at 44); (2) his lack of disciplinary infractions weigh in his favor (see id.); and (3) because "he has completed many rehabilitative and life

skills programs", "he has fulfilled the objective of § 3553(a)(2) that incarceration 'provide the defendant with needed educational or vocational training . . .'" (id.)  Defendant further maintains that if released, he will not pose a danger to the safety of any person or the community, because he is a changed person.  (See id. at 45.)  He claims this is evident by his: having become a model prisoner; having learned to regulate his prior impulsive behaviors; maintaining a job while incarcerated; and, helping train others.  (See id.; see also id. at 47 (arguing "[t]he biggest indicator" Defendant "is no longer a threat to public safety" is "his commitment to rehabilitation[] and character change").)

        In contrast, in advancing its position that the Section 3553(a) Factors weigh against a sentence reduction, the Government presses the heinous nature of Defendant's crimes, i.e., "the senseless murder of a child".  (Opp'n at 9.)  The Government argues the mistaken-identity murder of a child, undertaken by Defendant to advance his position in a violent gang, "ranks among the most serious of criminal conduct and requires a severe sentence to both punish and deter."  (Id. at 10.)  It contends consideration of the Section 3553(a) Factors, both at Defendant's sentencing and now, reflect the appropriateness of Defendant's life sentence.  (See id.)  The Government's arguments are persuasive.

        The Court finds the seriousness of Defendant's offense is the factor weighing most heavily in favor of denying his

compassionate release Motion. See Baker, 2025 WL 2733358, at *9-10 (finding, where defendant "killed [another] in cold blood in order to obstruct justice weighing most heavily in favor of denying" sentence reduction); United States v. Duarte, No. 99-CR-0192, 2025 WL 1434886, *8 (S.D.N.Y. May 19, 2025) (finding "the heinousness and gravity of [defendant's] criminal conduct", i.e., ordering the execution of a DEA informant to prevent informant from testifying against defendant, was the Section 3553(a) Factor weighing heavily against defendant's release; stating the "selfishness and violent nature of [defendant's] crime merits life-long imprisonment"); United States v. Marmolejos, No. 99-CR-1048, 2021 WL 3862851, *5 (S.D.N.Y. Aug. 30, 2021) (Chen, J., sitting by designation) (in denying motion to reduce a life sentence, where offense was murder-for-hire and not a crime of passion, stating it was "primarily the 'nature and circumstances' of Marmolejos's offenses, [that] weigh[ed] against release or sentence reduction" and that granting a reduction would not reflect the seriousness of the offense); cf. Santos, 2024 WL 4212024, at *4 (denying compassionate release motion of hired hit-man who killed the "wrong" people, one of whom was a 14-year-old, where, considering the Section 3553(a) Factors, inter alia, the court found there was considerable risk that a sentence reduction would "not adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public" (citation omitted)). The

seriousness of Defendant's offense continues to outweigh both his youthfulness and challenging upbringing. Indeed, Defendant's callous, deliberate actions robbed White of the balance of his youth and the future potential his life held.

Moreover and relatedly, "[t]his Court has repeatedly observed in gang-related cases: '[G]ang members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences.'" Gerald, 2024 WL 4694004, at *7 (quoting Lake, 2023 WL 8810620, at *6; citing Wagner, 2024 WL 2801981, at *8 (quoting Lake)); see also Henriquez, 2024 WL 4450851, at *6 (same). "It is no different here." Id.; see also Henriquez, 2024 WL 4450851, at *6 (stating, "[t]he same holds true—and, more so—here, especially when recognizing the underlying crime was an execution-style murder" which "demonstrated disrespect for the law and, more significantly, disrespect for human life"). As astutely stated by the Government at Defendant's sentencing, "there is nothing more terrible than the senseless killing of a child, and this killing occurred in the context of a life defined by violence." (Sent'g Hr'g Tr., ECF No. 243, at 35:8-11.) Moreover, White's aunt delivered a powerful impact statement, stating, inter alia: it was not just Defendant who would suffer the consequences for what he had done, but that White "had to suffer a painful death as a

38

consequence of [Defendant's] lifestyle", as well as White's siblings and cousins who "were traumatically affected as a consequence of [Defendant's] lifestyle" (id. at 12); that, notwithstanding Defendant's life sentence, "there will still be no winners" and "[w]e all loss . . . [b]ecause no matter how many lifetimes you spend in jail, it will never bring [White] back." (id. at 14:3-6.); and, to Defendant, "You made choices for all of us. What choice did [White] have? What choice did my family have? . . . We are all paying the price for your actions." (Id. at 14: 16-18.) Hence, Defendant's life sentence is "just and appropriate". (Id. at 35:11-13.)

At bottom, to the extent there are any sentencing factors which weigh in Defendant's favor, e.g., Defendant being assessed as having a low risk of recidivism (see, e.g., ECF No. 335-1 at ECF pp.123-125; Reply at 15-16), and his incarceration having provided him with needed educational and vocational training, those favorable factors are outweighed by the combined force of the nature and circumstances of the offense, and the need for the sentence imposed to: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; and, afford adequate deterrence to criminal conduct.[14]

---

[14] To be sure, deciding Defendant's Motion was challenging; Defendant presented considerations which were favorable to him. Indeed, since deciding to—as he describes it--change his way of thinking, Defendant has made praiseworthy strides in self-growth.

Moreover, the myriad letters of support from his fellow inmates demonstrate Defendant is now a role model to other prisoners. (See, e.g., June 5, 2023 Wayne Taylor Ltr., ECF No. 350 (character reference letter of former fellow inmate attesting to Defendant being "on a new path in life even though he had a life sentence" and describing Defendant as "a leader"); Mar. 1, 2024 R. Spear-Zuleta Ltr., ECF No. 354 (character reference letter of fellow inmate stating Defendant's "light shines, in this place of darkness" and Defendant "is always super-positive and always has kind words for everyone"); and, Mar. 4, 2024 D. Nave Ltr., ECF No.355 (character reference letter of fellow inmate, describing Defendant as "very productive", "super smart", and willing to share his knowledge, e.g., helping others acquire their GEDs and complete the Challenge Program)).  In the face of a life sentence, where vigorously pursuing rehabilitation does not necessarily offer concrete benefits, e.g., earned time credit, Defendant's turn-around is doubly commendable.  And, while likely not in the environment he envisioned reaping some benefit for his laudable rehabilitation, Defendant's rehabilitation has been fruition. Indeed, notwithstanding the sentence imposed, Defendant's life is "useful" (see Reply at 12); for example, as stated by T. Schupper, MSW, Challenge Treatment Specialist at USP Canaan:

> In his role as a Challenge Program mentor, Mr. Farmer has helped guide other participants through the program, helping them to understand the material and concepts as well as the implementation of the various tools and techniques the program has to offer.  He has sustained a high level of dedication to the Challenge Program as well as the psychological rehabilitation of the participants. Throughout his time in the Challenge Unit, I have seen remarkable growth and development in Mr. Farmer's attitudes and decision making abilities.  He is a very important component of the Challenge Program and is instrumental to its continued success at USP Canaan.

(Dec. 18, 2018 Memo of T. Schupper, ECF No. 335-1, at ECF p. 69 (emphasis added).)  Thus, as it did in the Latney case, where this Court found defendant's rehabilitation was in "the purview of being 'extraordinary and compelling,'" but, nonetheless, denied compassionate release, here, where it denies Defendant's Motion, the Court strongly encourages Defendant to continue serving as a mentor to his fellow inmates especially given that so many have

See Riley, 777 F. Supp.3d at 173 (where defendant was found guilty of two murders in aid of racketeering and being an accessory to a third murder, in considering Section 3553(a) Factors, finding "[t]he nature and circumstances of [defendant's] offenses, their seriousness, and the need to promote respect for the law, provide just punishment, and adequately deter criminal conduct weigh[ed] against a sentence reduction"); Frias, 2022 WL 3700088, *2 (where defendant was serving a life sentence related to a drug trafficking murder-for-hire plot, upon reconsideration of denial of compassionate release motion, ruling "the § 3553(a) factors that weigh in [defendant's] favor, such as the need to provide necessary medical care, are overshadowed by the combined force of 'the nature and circumstances of the offense' and the need for the sentence imposed to 'reflect the seriousness of the offense,' 'promote respect for the law,' 'provide just punishment for the offense,' 'afford adequate deterrence to criminal conduct,' and 'protect the public from further crimes of the defendant'" (citation modified)). Modifying Defendant's term of incarceration, given his serious criminal conduct, i.e., the senseless, retaliatory-motivated murder of a wrongly identified young teenaged boy, would disserve the above important sentencing factors. In sum, Defendant's life sentence continues to be

---

attested to the positive influence Defendant has had on them. See, e.g., Latney, 2025 WL 1126474, at *8, and *9 n.3.

sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a).

–*–*–*–

To the extent not explicitly addressed herein, the Court has considered Defendant's remaining arguments for a sentence reduction and finds them to be without merit.

<u>CONCLUSION</u>

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion seeking a sentence reduction (ECF No. 335) is **DENIED** in its entirety and without prejudice; and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  October 30, 2025
        Central Islip, New York